UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOCAL 955, UNITED SERVICE WORKERS, IUJAT ) | |
| ) | |
| Plaintiff, ) | 04 Civ. 6765 (RCC) |
| ) | |
| - against - ) | MEMORANDUM & |
| ) | ORDER |
| SERVICES FOR THE UNDERSERVED, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**RICHARD CONWAY CASEY, United States District Judge:**

Local 955, United Service Workers, IUJAT ("Plaintiff" or "Local 995") commenced this action to confirm a labor arbitration award (the "Award") rendered pursuant to the collective bargaining agreement between Plaintiff and Services for the Underserved, Inc. ("Defendant" or "SUS"). Defendant counterclaimed to vacate the Award, asserting that arbitrator Jack Tillem exceeded his authority when rendering the Award and that the Award violates public policy. Both parties now move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion is **GRANTED** and Defendant's cross-motion is **DENIED**.

**I.     BACKGROUND**

The following facts are not in dispute.

SUS is a human services agency that operates, among other mental health programs, a 48-bed single-room occupancy facility for mentally-ill adults, which is known as the Knickerbocker Residence (the "Knickerbocker"). (Def.'s Local Rule 56.1 Statement at 1 ("Def.'s 56.1 Statement").) SUS and Local 955, an unincorporated labor organization, are parties to a collective

bargaining agreement (the "Agreement"), which provides for final and binding arbitration of "[a]ll disputes, complaints, controversies, claims and grievances arising between the Employer and the Union covered by [the] Agreement. . . ." (Pl.'s Notice of Motion Ex. 1.)  The Agreement also provides that, once a dispute or other disagreement proceeds to arbitration, "[t]he arbitrator's authority shall be limited to the interpretation and application of the written specific terms" of the Agreement, and the arbitrator "shall have no authority to add to, subtract from, or modify the express provisions of [the] Agreement."  (Id.)

SUS employed Jean Smith ("Grievant" or "Smith") as a maintenance technician at the Knickerbocker for two years preceding his termination.  (Def.'s 56.1 Statement at 2.)  Smith was a member of Local 955.  (Id.)  SUS terminated Smith on July 9, 2003, after he engaged in an altercation with a mentally-ill resident referred to as "O" by both parties for confidentiality purposes.[1]  (Id.)  Local 955 filed a grievance on behalf Smith following his termination.

Pursuant to the Agreement between Local 955 and SUS, a hearing was held before Arbitrator

---

[1] SUS's "Beliefs, Standards of Responsible Action and Boundaries," a document setting forth rules of conduct for SUS employees, includes the following:

> There are certain actions which we believe are wrong no matter what the circumstances.  There is no tolerance for breaking a boundary.  Engaging in any restricted activity will result, in most instances, in immediate termination.  A staff member must never...
>
> [1] engage in any activity that constitutes ABUSE OF CLIENTS including physical, sexual, emotional mistreatment, neglect or intimidation.
> ....
>
> [8] Engage in VIOLENT OR AGGRESSIVE BEHAVIOR while on SUS business or on SUS property.

(Def.'s Notice of Cross Motion Ex. C.)

Tillem on June 4, 2004, at which time the parties presented witnesses and exhibits and argued their respective positions. (Def.'s 56.1 Statement at 7.) In his July 6, 2004 decision, Arbitrator Tillem described the relevant events leading to Smith's termination as follows:

> In the early summer of 2003, "O" made several telephone calls to grievant's wife Arlene Smith while she was on the job at the Clubhouse, a different facility in Brooklyn operated by the employer. He knew her because she had spent several years working at the Knickerbocker Residence before transferring to the Clubhouse. Although it is not entirely clear that he made any explicit sexual remarks . . . the fact is that Ms. Smith had no outside relationship with him and the calls were most unwelcome. Ms. Smith told her husband about them.
>
> On Wednesday morning July 9, 2004, shortly before 9 o'clock, grievant was engaged in tying up some boxes in the dining room. "O" was seated nearby on the other side of a partition eating a sandwich. As to what happened then, Steven Wilson, a security guard who happened to be in the dining room, testified: Grievant said to "O", I'd really appreciate it if you would stop calling my wife. Whereupon "O", hurling some expletives, angrily responded: Fuck that! Fuck you! She's nothing to you!
>
> Wilson then left the room. . . . Upon reentering, Wilson saw "O" on his back on the floor, grievant straddling him and holding him down.

(Def.'s Notice of Cross-Motion Ex. A at 2-3.)

Smith testified that after "O" cursed him, he "continued to tie boxes with his back to 'O' while 'O' went on [cursing him] for about two minutes . . . ." (Id. at 4.) According to Smith, "O" then attacked him from behind, grabbing his T-shirt and punching him in the eye. (Id.) "Grievant went down, grabbing 'O' around the legs, pulled him down to a prone position and straddled him. That is what he was doing when the security officers rushed over and pulled them apart. 'I didn't punch him,' grievant said. 'I didn't want to hit him so I held him down.'" (Id.)

With these facts in hand, the parties asked Arbitrator Tillem to address two questions in his opinion: "Was the discharge of Jean Smith for just cause? If not what shall be the remedy?" (Id. at 2.) Arbitrator Tillem answered the former question in the negative, and the latter by replacing the

grievant's discharge with a suspension without pay for time served. (Id. at 8.) As part of his reasoning, Arbitrator Tellem explained:

> . . . I must confess that I am unable to shake the suspicion that almost any husband, confronted with the situation as grievant was, might well trod down the same foolish path himself. There but for the grace of God go I. To be sure, Sir Gallahad has long since passed from the scene and chivalry may indeed be dead. But think about it: grievant's wife comes home, tells him a resident at the facility is making some very upsetting phone calls to her. So grievant simply tells him the next day that he would appreciate it if the calls stopped. Wrong move? Most definitely. A dischargeable offense? I don't think so.

(Id. at 7.) In addition, Arbitrator Tellem explained that Smith spoke to "O" in a "courteous manner," did not threaten "O," and absorbed a punch from "O" without returning the same; that management at SUS knew of "O's" telephone calls and did not take action, suggesting "a modicum of culpability on its part"; that Smith's work record, though brief, was without blemish; and that Smith could learn from his mistakes and "continue to make a positive contribution at the facility." (See id. at 7-8.)

## II.     DISCUSSION

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Issues of fact are "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and "material" when the disputed facts "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When viewing the evidence, a court must assess the record in a light most favorable to the nonmovant, resolving all ambiguities and drawing all reasonable inferences in that party's favor.

Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990). In particular,"[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). Only when it is apparent that "no rational [trier of fact] could find in favor of the nonmoving party because the evidence to support its case is so slight" may a court grant summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994); see also Anderson, 477 U.S. at 242-43 (noting that the role of the district court at the summary judgment stage is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

### A.   Arbitrator Tellem's Authority Under the Agreement

Courts review arbitration awards with considerable deference. So long as the arbitrator "is even arguably construing or applying the contract and acting within his scope of authority, that a court is convinced he committed error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). "The principal question for the reviewing court" is whether the arbitration award "draws its essence from the collective bargaining agreement, since the arbitrator is not free merely to dispense his own brand of industrial justice." Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199, 116 F.3d 41, 44 (2d Cir. 1997) (internal citations and quotations omitted). Accordingly, an award must be confirmed if the arbitrator offers "even a barely colorable justification for the outcome reached . . . ." Id. (quoting Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 704 (2d Cir. 1978)). "The party seeking to vacate or modify an arbitration award bears the burden of proof, and the showing

5

required of that party . . . to avoid summary affirmance of the award is high." DeGaetano v. Smith Barney, Inc., 983 F. Supp. 459, 461 (S.D.N.Y. 1997).

SUS argues that the Court should vacate the Award reinstating Mr. Smith because Arbitrator Tellem's decision exceeded the scope of his authority under the Agreement. Specifically, SUS asserts that Arbitrator Tellem, in determining that Mr. Smith's termination was without just cause, created an affirmative defense—chivalry—to a terminable offense—physical confrontation with a "client"—which is not contemplated by the Agreement. According to SUS, Arbitrator Tellem's invocation of Sir Gallahad represents the dispensation of "his own brand of industrial justice,"and lacks any basis in the parties' bargained-for agreement governing labor disputes. (See Pl.'s Notice of Motion Ex. 1.)

SUS's argument is unpersuasive. Local 955 and SUS together presented Arbitrator Tellem with two questions for decision: (1) whether the discharge of Mr. Smith was for "just cause," as permitted by the Agreement; and (2) if not, what remedy was appropriate. (See Def.'s Notice of Cross-Motion Ex. A at 2.) Arbitrator Tellem, in turn, provided several grounds for his determination that Mr. Smith was discharged without just cause, including Mr. Smith's relative restraint under the circumstances, his theretofore unblemished work record, management's failure to address the underlying issue in a timely manner, and Arbitrator Tellem's own sense that Mr. Smith could learn from his mistakes and continue to play a constructive role for SUS. (See id. at 7-8.) SUS fails to identify any facts indicating Arbitrator Tellem's opinion was not based on each one of these grounds. Thus, even assuming arguendo that Arbitrator Tellem's "Sir Gallahad rationale" invoked an affirmative defense not authorized by the Agreement, his opinion contains sufficient additional explanation to establish a "colorable justification for the outcome reached," and the Court's inquiry

is at an end. See Saint Mary Home, 116 F.3d at 44 (quoting Andros Compania Maritima, 579 F.2d at 704); see also id. at 45 ("In contracting for arbitration of disputes over whether just cause existed for discharging employees, the parties bargained for a decision by the arbitrator, not necessarily a good one, and that is what they received.").

Accordingly, the Court finds that Arbitrator Tellem's opinion is grounded in the parties' collective bargaining agreement, and that he acted within the scope of his authority when he ordered Mr. Smith's reinstatement.[2]

### B. Public Policy

SUS also argues that the Court should vacate the Award because Arbitrator Tellem's chosen remedy—reinstatement of Smith's employment—runs contrary to public policy. Since the Court has approved Arbitrator Tellem's determination regarding "just cause," however, the Court must assume "that the collective-bargaining agreement itself calls for [Grievant's] reinstatement," i.e., that "the award is not distinguishable from the contractual agreement." Eastern Assoc. Coal Corp. v. United Mine Workers of Am., District 17, 531 U.S. 57, 61-62 (2000). Thus, the precise question before the Court is whether the Award in this case renders the entire Agreement invalid in light of an "explicit," "well defined," and "dominant" public policy. Id. at 62 (quoting W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766 (1983)). And "the question to be answered is not whether [Grievant's behavior] itself violates public policy, but whether the agreement to reinstate him does

---

[2] The Court also notes that Local 955 and SUS could have added a provision in the Agreement that would render certain behavior automatically just cause for dismissal. They did not. Even SUS's "Beliefs, Standards of Responsible Action and Boundaries" explains that "[e]ngaging in any restricted activity will result, in most instances, in immediate termination." (Def.'s Notice of Cross Motion Ex. C (emphasis added).) Thus, Local 955 and SUS "agreed to let the arbitrator decide the question." See Saint Mary Home, Inc., 116 F.3d at 45.

so." Id.

SUS cites sections 33.03(a) and 31.19(a) of the New York Mental Hygiene Law and regulations promulgated thereby as evidence of a public policy prohibiting arbitration awards "that would compromise the care and treatment rendered to mentally-ill individuals." (Def.'s Mem. Opp. and Mem. Supp. Cross-Mot. Summ. J. at 14.) SUS also points to legal precedents which it claims indicate the same. (Id. at 14-15.) SUS has overstated its case. Yet even assuming the doubtful proposition that these laws and legal precedents establish an "explicit," "well defined," and "dominant" public policy against Smith's specific conduct on July 9, 2003, SUS has not identified any facts indicating that Smith's reinstatement as a maintenance technician at SUS clearly violates such a policy. See Eastern Assoc., 531 U.S. at 62.

Indeed, while Arbitrator Tellem found that Smith violated SUS rules when he approached "O" on July 9, 2003, Arbitrator Tellem notably did not find that Smith acted with aggressiveness or violence. To the contrary, Arbitrator Tellem found that Smith approached "O" in a courteous manner and responded to "O's" assault with notable restraint. (Def.'s Notice of Cross-Motion Ex. A at 2-3.) More importantly, Arbitrator Tellem found that Smith is "a candidate for rehabilitation, a person who can learn from his mistakes and continue to make a positive contribution at the facility." (Id. at 8.) Arbitrator Tellem determined, in effect, that Smith's reinstatement would not compromise the care and treatment of mentally-ill individuals at SUS.

SUS has not identified any facts indicating that Arbitrator Tellem's findings in this regard were erroneous. Even if his findings were flawed, however, the Court would decline to review his factual determinations. See Wallace v. Buttar, 378 F.3d 182, 193 (2d Cir. 2004) (holding that "[a] federal court may not conduct a reassessment of the evidentiary record," and as long as "a ground

federal court may not conduct a reassessment of the evidentiary record," and as long as "a ground for the arbitrator's decision can be inferred from the facts of the case," the court should confirm the award). Accordingly, the Court finds that the Award does not violate an explicit, well-defined, and dominant public policy.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Cross-Motion for Summary Judgment is **DENIED**. The Defendant must comply with Arbitrator Tellem's July 6, 2004 arbitration award, which requires the immediate reinstatement of Smith to his former status and position of employment with back pay to July 6, 2006.

**So Ordered:** New York, New York
August 31, 2006

_____
Richard Conway Casey, U.S.D.J.